Case 42.

## Harlan's Heirs *vs.* Seaton's Heirs.

PET. EQ.

APPEAL FROM GREENUP CIRCUIT.

1. The protection of the Statutes of 1796, to purchasers, for a valuable consideration, without notice, against an unrecorded deed of the grantor, extends only to purchasers from the grantor himself, and not to purchasers from his heirs or devisees. (*Ralls vs. Graham,* 4 *Mon.* 120; *Hancock vs. Beverly's Heirs,* 6 *B. Mon.* 531.)

2. The infancy of some of the heirs when the right of all accrued by descent, prevents limitation from running, and saves the rights of the other heirs. (*May's Heirs vs. Bennett,* 4 *Litt.* 314.)

3. The failure of a non-resident, prior to 1825, to list his lands for taxation, although a cause of forfeiture, did not, *ipso facto,* divest him of title, until inquest of office. (*Barbour vs. Nelson,* 1 *Litt.* 61 ) *Aliter* since the act of 1825, (*Stat. Laws,* M. & B. vol. 2, 1079,) which latter act, however, is limited by its terms to cases of forfeiture accruing after its passage.

4. The act of 1828 (*Stat. Law,* M. & B. vol. 2, 1081,) only embraces occupants in possession, who have title in law or equity, expressly including occupants claiming title by land warrant, issued since 6th February, 1815.

[The facts of the case appear in the opinion of the court.   REP.]

*J. Harlan*, and *H. Taylor*, for appellants—

Argued: The judgment of the circuit court, in dismissing plaintiffs' petition, is erroneous for the reasons following:

1. The possession of the land in controversy was constructively in the Harlans for more than forty years before any hostile entry by Seaton upon any part of it.

2. We think the evidence of the execution of the deed by Thomas Keith to Joshua Harlan, in 1794, is ample. It is seldom that so much proof of a character so convincing, if not conclusive, can be found after so great a lapse of time. Four witnesses attested the *sealing and delivery* of the deed, three of the same four persons witnessed the signing of the receipts for the purchase money. All the subscribing witnesses being dead, secondary proof of their handwritings is admissible. (1 *Greenleaf's Ev.* sec. 572; *Adams vs Kers*, 1 *Bos. & Pul.* 360.) The proof in this case, of the hand writing of the witnesses, to the deed, and the genuineness of the signature of the mayor of Philadelphia, before whom it was acknowledged, and who certified the same, is clear and direct.

3. The evidence taken by the defendants is insufficient to invalidate the deed under which the plaintiffs claim the land. It consists mainly of the opinions of witnesses, as to the genuineness of the signature of the grantor, who had no previous knowledge of his hand writing, by comparing the signature to the deed with such others as the defendants chose to allege to be genuine.

We think the law to be well settled, that comparison of hand writings, by juxtaposition of two writings, to ascertain whether both are written by the same person, is inadmissible. (*Jackson on Dem. Parker vs Phillip*, 9 *Cowen's Rep.* 94; *Phillips Ev. vol.* 1, page 493; *Barn. & Ald.* 5 *vol.* 330; *The People vs Spooner*, 1 *Denio*, 343.) Similar decisions have been made in New Hampshire, Missouri, and Rhode Is-

lanp. (*Marshall vs Columbia Insurance Company*, *N. H.* 157; *Swan vs O'Fallen*, 7 *Missouri Rep.* 231; *Furbur vs Hilliard*, 2 *N. H. Rep.* 480; *Kinney vs Flin*, 2 *R. Island Rep.* 319; also, *Hawkins vs Grimes*, 13 *B. Mon.* 266.)

4. One of the grounds of defense relied upon by the defendants is, that conceding that Thomas Keith sold the land in controversy to Joshua Harlan, and executed the deed in question in due form of law, and it was acknowledged before a proper officer, yet, as Samuel Seaton had no notice, actual or constructive, of that sale and conveyance at the time he purchased the land from a part of the heirs of Keith, the heirs of Seaton ought to be protected, as their ancestor was an innocent purchaser for a valuable consideration.

This court has decided in numerous cases, that omitting to record a deed does not reduce the estate of the grantee to an equitable one merely. The deed though not recorded still retains its legal quality. It passes the title as between the vendor and vendee, and is a valid legal conveyance against all except creditors and *bona fide* purchasers for a valuable consideration, who have recorded their deeds in time. (2 *Bibb*, 421, 446; 7 *Mon.* 267; 2 *Mar.* 457; 3 *Ib.* 12; 2 *J. J. Mar.* 433.)

The precise question now under consideration has been decided by this court in the case of *Hancock vs Beverley's heirs*, 6 *B. Mon.* 531. It was also decided in *Ralls vs Graham*, 4 *Mon.* 120, that the vendee of the devisee took nothing by his recorded deed, and that the deed from the patentee passed the title to his vendee.

5. The next question is, whether the defendants obtained any title to any portion of the land in controversy in virtue of the two patents to Samuel Seaton from the state of Kentucky.

We say no title passed—*First*. Because the land embraced within his patents had been previously appropriated under the survey which had been made

to Keith, and the patent issued thereon. (*Hardin vs Cain*, 2 *B. Mon.* 56.) *Second.* Because the land was not subject to appropriation, having been forfeited to the state for a failure to list it for taxation, as alleged by the defendants. (*Stith vs Hart*, 6 *Mon.* 629.)

6. The defendants contend, that as respects the land embraced in the patent of 1835, issued to Samuel Seaton, the title thereto is valid, because of seven years possession prior to the commencement of the suit by the heirs of Harlan.

The position is not maintainable for two reasons: *First.* The land embraced within the patent was not subject to appropriation under a treasury warrant claim, and the patent is void. *Second.* Some of the heirs of Harlan were and are now infants, and the infancy of one heir prevents the statute of 1809, (called seven years law,) from running, and saves the right of all. (*May's heirs vs Bennett*, 4 *Littell*, 314.)

7. It is also contended that Samuel Seaton became invested with the title of the plaintiffs by the alleged forfeiture to the state for the failure to list for taxation.

The alleged forfeiture was under the act of 1801, (2 *Stat. Laws*, 1073;) and this court decided, (*Barbour vs Nelson*, 1 *Litt.* 61,) that the failure on the part of a non-resident to comply with the requisitions of that act did not, *ipso facto* divest him of his land, without inquest of office, which was essential to vest the title in the commonwealth.

The act of 1825, (2 *Stat. Laws*, 1079,) providing that such forfeiture shall divest the owner of title without office found, will be found to be prospective in its operation, and is not therefore applicable to the present case.

Upon the whole case, we think we have shown that the judgment of the circuit court dismissing the petition of the plaintiffs is erroneous, and should be reversed. And that it may be assumed as established by the evidence and the law applicable to the

case—1. That Thomas Keith sold the land in controversy to Joshua Harlan, in 1794, received a valuable consideration therefor, and executed the deed exhibited by the plaintiffs. 2. That said Joshua Harlan, during his lifetime, and his heirs after his death, were actually possessed, in legal contemplation, of the land in controversy for at least forty years prior to any attempt by Samuel Seaton, or by any other person, to take possession of any part thereof. 3. That Samuel Seaton acquired no title to the land by the conveyance made to him by the heirs of Thomas Keith, in December, 1845, because no title descended to them, their ancestor having conveyed the land, in his lifetime, to Harlan. 4. That said Seaton did not become invested with title to any part of the land embraced in the two patents issued to him by the state of Kentucky; and, 5 That the plaintiffs were entitled to a judgment for the entire tract of land claimed by them, subject to any equitable claim for improvements and taxes to which the heirs of Seaton may show themselves entitled.

*Ed. F. Dulin,* for appellees, H. E. and J. Seaton—

Argued: The plaintiffs claim that on the 3rd day of September, 1787, a patent issued from the state of Virginia, to Thomas Keith, for the land in controversy. The defendants admit the same. The plaintiffs claim under this patent, and a writing, purporting to be a deed from the patentee, dated 24th October, 1794, and acknowledged before Clarkson, mayor of Philadelphia, on the 25th October, 1794. This deed was never recorded in Kentucky, or deposited for record, until the 27th day of February, 1851, when it was recorded in the county clerk's office of Greenup county.

The defendants claim all the land—20,626 acres—except two-thirds of one-sixth, by deeds from the children and grand-children and heirs at law of the patentee, Thomas Keith, which appear in the record.

John Seaton claims the one-sixteenth of the interest purchased by his father, by bond for title from Samuel Seaton, dated 6th day of February, 1847.

H. E. Seaton claims the residue of her husband's purchase, under his will, and as sole divisee, and as executrix. The evidences of this claim are found in the record.

These defendants do not claim any right or title or possession to the two-thirds of one-sixth; they do not, however, admit that there is any right in the plaintiffs.

There are two main questions presented in the case, the decision of either of which, for the defendants, we conceive must be decisive of the success of the defendants.

1. Does the evidence in the record show that the instrument set up by the plaintiffs *is false, fraudulent, and forged?*

2. If it does not, and this court shall be of opinion that said instrument, purporting to be a deed from the patentee to Joshua Harlan, is genuine, and conveys to him the patentee's title, and that the plaintiffs are his heirs at law, does the statute of conveyances protect Samuel Seaton and those claiming under him, in virtue of the deeds of the patentee's heirs as *bona fide*, and innocent purchasers without notice?

If these propositions are each determined against appellees then there are other subordinate positions which it is contended must be decided for appellees. They are—

1. Have the plaintiffs proved themselves the heirs at law of Joshua Harlan?

2. Can the defendants protect themselves to any extent under the two Kentucky patents to Samuel Seaton?

3. Can they protect themselves to any extent under the forfeiture of the land for taxes, and failure to list and pay, and its redemption by Seaton?

Harlan's H's
vs.
Seaton's H's.

4. Are they not entitled to pay for improvements upon the lands, and for quieting the title and possession, and for taxes paid?

5. Does not the record show that there were necessary parties to the suit wanting?

As to the first main question: Does the evidence show the professed deed from the patentee to Joshua Harlan to be *fraudulent and forged?*

The defendants plead to the deed, *"non est factum."* Though thirty years old, the paper does not prove itself, therefore, upon the defendants plea, the *onus probandi* is thrown upon the plaintiffs. The deed was always in possession of the plaintiffs. The plaintiffs never had possession of any of the land. The length of time, the failure even to attempt to have it recorded, the suspicion of its genuineness, require other corroborative circumstances, *prima facie*, to sustain it and throw the burthen on the defendants. (*Greenleaf's Ev. vol.* 1, 570.) The only proof adduced of the genuineness of the paper is proof of the handwriting of the witnesses, and the mayor; and as to that of the mayor, only by comparison of his writings. No attempt is made to prove the handwriting of the grantor, which ought first to be done before the secondary evidence could be adduced. There is no attempt to identify Keith; all this must be done before there could be any force in this testimony. (*Greenleaf's Ev. vol.* 1, *section* 575; *Starkie Ev. page* 652–8.)

Now, as to the proof of the defendants on this question. The rule laid down in *Hawkins vs Grimes*, 13 *B. Mon.* 261, it is contended, by plaintiffs, will exclude the defendants' testimony as incompetent. Here are a number of the patentee's signatures to records and official papers, admitted and acted upon as genuine; these are compared with the signatures of the instrument, under which the plaintiffs seek to recover, and upon a full and fair comparison, by men of intelligence, skill, and honesty, the two signatures are pronounced different. We refer to the case,

*supra*, for the competency of our proof, as it is certainly within the exception to the rule in that case. (*Also*, *Wilson vs Betts*, 4 *Denio*, *N. Y.* 210; *Amherst Bank vs Root*, 2 *Metcalfe*, *Mass.* 522; *Strother vs Lucas*, 6 *Peters*, 763; *McCallister vs McCallister*, 7 *B. Mon.* 270.)

As to the second main question: Are the appellees protected by their recorded deed from Keith's heirs, as *innocent and bona fide purchasers*, *&c.?*

At first blush, the case of *Hancock vs. Beverly's heirs*, 6 *Ben. Monroe*, 531-2-4, would seem to be conclusive upon the point. But let us admit, for argument, that it is not conclusively proven that the document under which the plaintiffs set up claim is a forgery, or a fraudulent instrument, yet it certainly must be admitted, that if we do not come to an affirmative conclusion on that point, we must certainly have great doubt, from all the proof in the case, of its genuineness. If so, then, according to the last clause of that opinion, the plaintiffs connot certainly and surely recover upon the fact that the deed of Keith's heirs did not vest any title in Seaton. And this fact goes to strengthen our first position.

We will now turn to the subordinate positions taken by us.

As to the first. We admit the proof shows the plaintiffs are the heirs-at-law of Joshua Harlan, but they do not charge, and do not prove, that he died without a will, or intestate, as to this claim of this land. Therefore, we say they do not clearly show they are the proper persons to sue.

Secondly: Can the defendants protect themselves under the two Kentucky patents for 2,300 acres to Samuel Seaton to the extent of said 2,300 acres? The proof shows that Seaton had had possession, by himself and tenants, for more than seven years before the death of Joshua Harlan, and therefore, in any event, the plaintiffs, as to the 2,300 acres, are barred under the seven years law, which is pleaded and relied upon.

HARLAN's H's
vs.
SEATON's H's.

Thirdly: Can the defendants protect themselves under the forfeiture to list for taxation? (*See the deposition of Thomas Page, p.* 76, *and the Governor's remission to Seaton, p.* 76.) Are they not protected from recovery by plaintiffs by virtue of the 8th section of the act of 1825. (*Brown & Morehead,* 2*d vol. p.* 1079, *and the* 1*st section of the act of* 1828, *same book, p.* 1081?) If they are not, we are at a loss to know what cases will be.

Fourthly: Are they not entitled to pay for the improvements, &c. This question, upon the general principle of equity, as well as by the authority of the cases *Hart's heirs vs. Baylor, Hardin,* 597–602; *Haskins vs. Spiller, &c.,* 3 *Dana,* 573–6, and same case in 1st Dana, and others, must be answered affirmatively.

Now, as we think that it must be conceded from the proof, that the deed under which plaintiffs claim, is *a forgery, and fraudulent* one, the judgment below must be affirmed; but if it shall not be so regarded by the court, then plaintiffs have still no title under which they can recover, because the land has been forfeited to the state for failure to list for tax, and for failure by them or their ancestor to pay the same, or even to attempt to redeem it. The title, by virtue of the statutes of forfeiture of land in such cases, both in law and equity, is out of them, and they have no right to maintain their suit. (*Brown & Morehead,* 2*d vol.* 1072 *to* 1094, *inclusive.*) The forfeiture had accrued before the death of Harlan, and his right to redeem had expired. There was, therefore, no saving to the plaintiffs.

But if the court should be of opinion that the case should be reversed, so as to give the plaintiffs a part or all of the land, there should be no judgment against Alfred Spalding and his wife, for they disclaim all claim or possession to or of any part; nor should there be any against Samuel and Mary Seaton, because they do not claim any, and the record shows that fact.

HARLAN's H's
vs.
SEATON's H's.

*Wadsworth* for appellees—

Argued: The appellants seek to recover against us upon a deed, unrecorded for 56 years, purporting to have been executed by Thomas Keith on 25th day of October, 1794. They have no other equity.

Appellees claim under Thomas Keith also, by deed from his widow and heirs, duly executed, authenticated, and recorded, bearing date December 16th, 1845.

1. We claim that we are purchasers for a valuable consideration, without notice, within the meaning of the recording acts, and that therefore the unrecorded deed is not "good" against us.

The contrary has been held by this court in the case of *Hancock vs. Beverley' heirs,* 6 *B. Monroe,* 531.

We respectfully submit that the decision in that case is not warrantable upon principle, and does not correctly construe the recording acts, whether they be considered with reference to their terms alone, or as a system for the safe and convenient sale and conveyance of real estate. We therefore deny that it is the law of this case, and earnestly petition that our rights herein may not be determined by it.

The court in that case admits that the extension of protection to the purchaser, &c., from the heir, &c., of the original grantor, would seem to be consonant with the intent of the statute in giving preference to the *recorded evidences* of title. That the statute "must be construed by its own language and objects;" and concedes that the question at last is "doubtful and important;" but thinks that "in effect it is decided by this court in the case of *Ralls vs. Graham,* 4 *Mon.* 120; and that as the court is not prepared to overrule that case," the opinion of the court below is affirmed.

The original grantor, upon every principle of law and reason, has no more, and upon principles of justice less title, than the innocent donee, devisee, or heir. If the grantor had any title that *he* could *convey,*

HARLAN'S H'S
*vs.*
SEATON'S H'S.

it would descend to his heir; he could pass it by an attorney in fact; invest it in any grantee; but he has none whatever. The statute leaves no ne in him, it only invalidates the real *unrecorded* title in favor of the *recorded ostensible* title. This is the fair construction of the words used, as well as the obvious, well recognized aim and policy of the acts. "A purchaser for a valuable consideration without notice." A "purchaser" of what? The title? The act cannot mean that, because the title is with the *unrecorded* deed. The object of purchase then is the land. But a purchaser from whom? A title holder? That is not the grantor, but the grantee in the *unrecorded* deed and he only. The act means then a purchaser of the land from him who *ostensibly*, upon the records, is the title holder. This is the grantor, or his donee, devisee, heir, or vendee, as the case may be. In *Myers & Co. vs. Sander's heirs*, 7 *Dana*, 519, and in *Fletcher vs. Peck*, 6 *Cranch*. 135, forcible observations are made in reference to the policy of protecting *ostensible* titles. We contend, therefore, that the justice and policy of the law, and the aim of the recording acts, protect the *bona fide* purchaser of the *ostensible* title, exhibited by the record, by *invalidating* the title of the grantee in the *unrecorded* deed.

The court was evidently not satisfied with the doctrine of *Hancock vs. Beverly, supra,* and put it in what they say was "in effect decided by this court in the case of *Ralls vs. Graham*," cited *supra*, and because they were "not prepared to overrule that case." A re-examination of the latter case is respectfully asked, as we do not think it has decided the point made in *Hancock vs. Beverly, supra*.

Inasmuch as the case last cited seems to have been rested on *Ralls vs. Graham*, contrary to the "seeming intent" of the statute, "its objects &c.," contrary to the "justice and policy of the law," it is hoped its doctrine will not be applied in a case *so extreme* as the present, against the judgment of the circuit court.

2. A court of equity ought not to assist parties complainant, out of possession, and claiming under an unrecorded deed 56 years old at the date of its production, when the delay to record, to set up claim to the land, to list and pay taxes, &c, are wholly unexplained, when to grant the relief would inflict such loss upon defendants, betrayed into a purchase, and heavy expenditures for improvements by the criminal laches of the complainants, more especially if the title set up by them is not entirely free from the taint or suspicion of fraud.

3. The deed set up by complainants is not the act and deed of Thomas Keith, but a forgery.

To sustain this we rely upon the fact that for 56 years Joshua Harlan, the grantee, and his heirs, and for 46 years of that time Joshua Harlan himself, failed to place the deed on record in pursuance of the laws of this State, and the intent of the acknowledgment certified thereon; that for that length of time no person now living ever saw or heard of the deed, or heard of the claim of title by Harlan, who never looked after the land, or attempted to preserve it by entry, survey, settlement, or by listing it and paying the taxes thereon, or attempting to redeem it during many years it was forfeited to the State, and that for all these things no explanation is offered.

We also rely upon the depositions taken in the case proving that the signatures to the deed under which appellants claim are not the genuine signatures of Thomas Keith, but forged and fraudulent.

The appellants object to this testimony as incompetent, because the witnesses never saw Thomas Keith write, or are not acquainted in any legal manner with his handwriting, and speak from a comparison of other signatures of Thomas Keith with the disputed signatures.

It is contended that the objection comes too late, no exception having been taken in the circuit court to the depositions. But the testimony is admissable

(*Hawkins vs. Grimes*, 13 *B. Monroe*, 262.) They come within the rule laid down in *Greenleaf's Ev. vol.* 1, *sec.* 577; also in 4 *Denio*, 201, *Wilson vs. Betts*; *Amherst Bank vs. Root*, 2 *Metcalfe*, 522.

It comes within the first exception to the general rule laid down in 1 *Greenleaf's Ev. sec.* 578," "where 'the writing is of such antiquity that living witness- 'es cannot be had, &c., in which case other docu- 'ments, either admitted to be genuine or proven to 'have been treated and acted on by all parties as ' such, may be produced, and experts may, upon com- 'parison, testify their opinion concerning the genu- 'ineness of the writing in question." (*Starkie's Ev. vol.* 2, 657; *Woodward vs. Spiller*, 1 *Dana*, 181; *McAllister vs. McAllister*, 7 *B. Mon.* 270; *Hawkins vs. Grimes*, 13 *B. Monroe*, 261; *Strother vs. Lucas*, 6 *Peters*, 763; *Swigert vs. Richards*, 8 *Barr.* 436; *West vs. State*, 2 *New J.* 212.)

4. The right, title, and interest of Keith, and Harlan claiming under him, was forfeited to the State for failure to enlist and pay taxes on the land, and was redeemed by Samuel Seaton in 1846, and by virtue of the operation of the acts of 1806, 1822, (2 *Digest* 1094;) 1825, (*Ibid*, 1079;) 1828, (*Ibid*, 1081.)

5. There are other reasons why the bill of appellants was properly dismissed. Proper parties had not been made to enable appellants to have a division, they did not answer the interrogatories upon the subject of champerty, &c., &c.

6. It seems to be conceded that appellees must be allowed the full value of their improvements, and the expenditure incurred in relieving the land from adverse claims; also, the taxes paid, with interest upon these sums.

We think that justice, public policy, the very right of the matter, and as we trust the law, is on the side of the Seaton family; wherefore we earnestly and respectfully ask an affirmance.

Judge SIMPSON delivered the opinion of the court.

The land in contest was patented to Thomas Keith in September, 1787. The plaintiffs claim it, as the heirs at law of Joshua Harlan, deceased, under a deed to their ancestor, purporting to have been executed by the patentee, for a valuable consideration, in the city of Philadelphia, in October, 1794, but which was not recorded until October, 1851.

The defendants claim it by virtue of a purchase by their ancestor from the heirs at law of the patentee after his death, and deeds of conveyance executed by them in pursance of the purchase prior to the time of the recording of the deed under which the plaintiffs set up title to it. They also rely upon two junior patents which issued to their ancestor, and which cover part of the land in controversy, and deny that Thomas Keith, the patentee, executed the deed under which the plaintiffs claim the land.

On the part of the defendants it is contended, that if the deed relied upon by the plaintiffs be genuine, still, as it was not recorded until upwards of forty years after its execution, and the land in the meantime had been sold and conveyed by the heirs at law of the grantor, to a purchaser for a valuable consideration, without notice, it ought not to be permitted to prevail against the deed made by the heirs, they being, at the time it was made, the ostensible owners of the land.

· If this question was one of first impression, and had not been heretofore decided by this court, we would be strongly inclined to give to the statute a liberal construction, and make it apply as well to the purchasers from the heirs of the grantor of an unrecorded deed, as to purchasers from the grantor himself. The mischief is the same in both cases. The heirs at law are as much the apparent owners of the land as the grantor was in his lifetime, and the protection of innocent purchasers being the evident object of the statute, it would seem to be just and reasonable, and not only consistent with, but

HARLAN'S H'S
vs.
SEATON'S H'S.

1. The protection of the Statutes of 1796, to purchasers, for a valuable consideration, without notice, against an unrecorded deed of the grantor, extends only to purchasers from the grantor himself, and not to purchasers from his heirs or devisees. (*Ralls vs. Graham,* 4 *Mon.* 120; *Hancock vs. Beverly's Heirs,* 6 *B. Mon.* 531.)

promotive of, the legislative intention, to give it such a construction as would make it operate as a remedy for the whole evil, which it was intended to guard against. But in the case of *Ralls vs. Graham,* 4 *Monroe,* 120, and in the case of *Hancock vs. Beverly's hrs.* 6 *B. Monroe,* 531, it was decided that the protection afforded by the statute, against an unrecorded deed, only extends to purchasers from the grantor himself, and not to purchasers from his heirs or devisees, who derived no title from him inasmuch as it had passed to his grantee before his death, although the deed had never been recorded. This principle having been acted upon, and the decision of other cases which have not been reported, having been governed by it, it has become a rule of property by which the rights of parties have been regulated, and should not be departed from or overturned, except for the most weighty and important reasons. It is better that the law should remain permanent, so far as judicial action is concerned, although settled originally upon doubtful principles, than that it should be subject to constant fluctuations, according to the views and opinions which might be entertained by the court, as constituted, at the time the same question might at some subsequent time arise. Regarding this question therefore as settled by previous decisions, the deeds executed by the heirs of the patentee cannot be relied upon by the defendants to defeat a recovery by those who claim under the unrecorded deed.

The defense under the junior patents, for so much of the land in contest as is embraced by them, is also unavailing. The defendants possession had not been continued twenty years before this action was commenced, and as some of the plaintiffs labored under the disability of infancy when their right accrued by descent, which occurred before the possession had been continued seven years, and still labored under that disability at the commencement of the action, the seven years limitation did not affect their

2. The infancy of some of the heirs when the right of all accrued by descent, prevents limitation from running, and saves the rights of the other heirs. (*May's Heirs vs. Bennett,* 4 *Litt.* 314.)

rights, and their disability saved the rights of the other plaintiffs from the operation of the statute. (*May's heirs vs. Bennet*, 4 *Litt.* 314.)

The defendants also contend, as the plaintiffs and their ancestor were non-residents, and never listed the land in controversy for taxation, that under the various statutes upon the subject it was forfeited to the state for the failure to list it for taxation, and therefore the plaintiffs cannot maintain their present action. It is not however alleged that the forfeiture relied upon had been ascertained by inquest of office, and it was decided in the case of *Barbour vs. Nelson*, 1 *Litt.* 61, that the failure on the part of a non-resident to list his lands for taxation, although a cause of forfeiture, did not, *ipso facto*, divest him of the title thereto, but that an inquest of office was necessary for that purpose.

By the act of 1825, (2d vol. *Statute Law*, 1079,) it was declared, that where any lands should thereafter be forfeited for failing to list them for taxation, the title thereto should vest in the commonwealth by virtue of that act, without any inquest of office found.

But the land in contest had been forfeited for failing to list it for taxation previous to that time, and as the act was, in express terms, limited in its operation to cases of forfeiture occurring after its passage, it did not afford the defendants any protection or furnish them with an available defense.

The 11th *section* of that act appears to have been intended to apply alone to suits commenced in the courts of the United States; but if it were applicable to suits in the state courts the defendants could not derive any advantage from it, inasmuch as the land had been redeemed by their ancestor, after it was purchased by him, and the complainants were thereby prevented from complying with the requisitions of the statute.

The act of 1828, on the same subject, (2d *volume Statute Law*, 1081,) only embraces occupants in pos-

---

*Margin notes:*

HARLAN's H's
*vs.*
SEATON's H's.

3. The failure of a non-resident, prior to 1825, to list his lands for taxation, although a cause of forfeiture, did not, *ipso facto*, divest him of title, until inquest of office. (*Barbour vs. Nelson*, 1 *Litt.* 61.) *Aliter* since the act of 1825, (*Stat. Laws, M. & B.*vol.2,1079,) which latter act, however, is limited by its terms to cases of forfeiture accruing after its passage

4. The act of 1828 (*Stat. Law, M. & B. vol.* 2,

HARLAN'S H's
vs.
SEATON'S H's.

1081,) only em-
braces occupants
in possession,
who have title
in law or equity,
expressly inclu-
ding occupants
claiming title
by land warrant,
issued since 6th
February, 1815.

session, who have a title either in law or in equity to the land thus occupied, and expressly excludes from its provisions all occupants claiming the same under a title founded on a land warrant issued since the 6th day of February, 1815, consequently the provisions of this last named act do not extend to or embrace the present defendants, nor can they derive any protection against the claim of the plaintiffs from this or any other statute passed for the security of the occupants of land.

If, therefore, the plaintiffs have succeeded in proving the execution of the deed of 1794, from the patentee to their ancestor, Joshua Harlan, their right to the land in contest is clear, as all the other matters relied upon by the defendants are insufficient to defeat their claim.

This deed bears upon its face unmistakeble indications of its genuineness, and the proof of its execution is to our minds perfectly satisfactory. Giving to the opposing testimony all the weight to which it is entitled, still we entertain no doubt that the deed was executed by the patentee himself at the time and place it purports to have been made. His widow proves that he went to Philadelphia about that time to sell some land in Kentucky, and made a sale of it, as she understood from him on his return home. She communicated the same information to some of her children as they grew up, and the fact never seems to have been doubted by any of the family. They sold the land in contest, as they say, under the belief that it was not the same land which their father had sold in his lifetime, but it does not appear that he sold any other land, or had any other in this state to sell. Without therefore entering into a minute discussion of the testimony bearing upon the question, we deem it sufficient to say, that we regard the execution of the deed as being fully and satisfactorily established.

The plaintiffs, therefore, have a right to the land sued for, but as the defendants and their ancestor

have made lasting and valuable improvements upon it, without any knowledge of the plaintiffs title, and under the belief that their purchase from the heirs of the patentee was valid, and conferred upon the purchaser a good and valid title thereto, they are equitably entitled to compensation for these improvements, to the extent at least that they have enhanced the value of the land. They have also a right to have the money refunded which was paid to redeem the land from the forfeiture which had been incurred by the failure to list it for taxation, with interest thereon, and also any other money expended for the benefit of the plaintiffs title to the land. The facts which appear in the record are not sufficient to enable this court to fix accurately all the principles which should regulate the adjustment of the defendants claims for improvements and expenditures, and these matters should be referred to a commissioner and settled upon equitable principles.

The defendants have a life estate in one-third of the land under the conveyance of Judith Keith, the widow of the patentee, if she be still living.

Wherefore, the judgment is reversed, and cause remanded for further proceedings in conformity with this opinion. The appellees, Hannah E. Seaton and John Seaton must pay the costs of this appeal.